**No. 24-5045**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

COURTNEY MCMILLIAN and RONALD COOPER,
ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED

*Plaintiffs-Appellants*,

v.

X CORP., F/K/A TWITTER, INC., X HOLDINGS,
ELON MUSK, DOES,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-03461-TLT
Hon. Trina L. Thompson

---

**APPELLANTS' OPENING BRIEF**

---

Kate Mueting
Dacey Romberg
Samone Ijoma
Christopher Owens
Sanford Heisler Sharp McKnight, LLP
700 Pennsylvania Avenue SE, Suite 300

1

Washington, DC 20003
202-499-5206
kmueting@sanfordheisler.com
dromberg@sanfordheisler.com
sijoma@sanfordheisler.com
cowens@sanfordheisler.com

Kristi Stahnke McGregor
Sanford Heisler Sharp McKnight, LLP
611 Commerce Street, Suite 3100
Nashville, TN 37203
615-434-7008
kmcgregor@sanfordheisler.com

Charles H. Field
Sanford Heisler Sharp McKnight, LLP
7911 Herschel Avenue, Suite 300
La Jolla, CA 92037
619-577-4252
cfield@sanfordheisler.com

*Attorneys for Appellants*
Courtney McMillian and Ronald Cooper,
on behalf of themselves and all others
similarly situated

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................5

INTRODUCTION .....................................................................................9

JURISDICTIONAL STATEMENT ..............................................................12

STATUTORY AUTHORITY .....................................................................13

ISSUES PRESENTED ...............................................................................14

STATEMENT OF THE CASE ...................................................................16

   I.  The Twitter Severance Plan .............................................................17

   II. The District Court Decision..............................................................20

SUMMARY OF THE ARGUMENT...........................................................25

STANDARD OF REVIEW ........................................................................30

ARGUMENT............................................................................................31

   I.  Background on ERISA .......................................................................31

      A.   ERISA is notoriously broad and governs severance plans. ............31

      B.   Supreme Court and Ninth Circuit caselaw establish severance plans are governed by ERISA if they implicate an ongoing administrative scheme. .........................................................................................32

      C.   The Supreme Court has established that a benefit plan must implicate an "ongoing administrative scheme" to be subject to ERISA...........................................................................................32

      D.   The Ninth Circuit adopted the ongoing administrative scheme standard...........................................................................................34

         i.   One-time payments can be ERISA plans. .....................................35

         ii.  Unlike employer benefit cases, government program cases are subject to a presumption against preemption.................................37

   II. The Complaint alleges sufficient facts to establish that the Twitter Severance Plan implicates an ongoing administrative scheme, and the district court erred in determining otherwise.........................................37

      A.   The district court erred by concluding that the Twitter Severance Plan had been amended. ...............................................................39

      B.   The district court erred by failing to analyze the Plan from a plan-wide perspective. ..........................................................................43

3

      i.   The district court conflated the terms of the Plan with the application of the Plan to Musk-era layoffs. ....................................44

     ii.  The district court analyzed the Plan from the point of view of individual employees rather than the employer. ............................47

  C.   The district court erred by holding that the Twitter Severance Plan does not implicate sufficient discretion............................................49

III.  The district court was required to accept the allegations in the Complaint as true and draw inferences in Participants' favor but failed to do both. .............................................................................................51

  A.   The district court erred in assuming that all employees are eligible for severance and that severance benefits are determined using only a mathematical formula. ...................................................................55

  B.   The district court erred by accepting as true allegations in other lawsuits that are disputed by Participants' allegations. ....................57

  C.   The district court erred by concluding that the Plan solely requires a one-time lump-sum payment............................................................59

  D.   The district court erred by suggesting that Participants did not plead facts showing a risk of mismanagement or abuse. ...........................61

IV.  The components of the Twitter Severance Plan are reasonably ascertainable...............................................................................................63

V. The district court erred by not allowing participants to amend their Complaint...............................................................................................65

  A.   The district court's conclusion that amendment of Participants' ERISA claims would be futile was based on misconstruing facts alleged in the Complaint....................................................................65

  B.   The district court's conclusion that Participants lack constitutional standing, and, therefore, amendment would be futile, is also based on misconstruing facts alleged in the Complaint. ...........................67

CONCLUSION ................................................................................................69

CERTIFICATE OF COMPLIANCE .............................................................70

# TABLE OF AUTHORITIES

### Cases

*Allen v. GreatBanc Trust Company*,
 835 F.3d 670 (7th Cir. 2016)....................................................53

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................ 45, 53

*Bell Atlantic Corporation v. Twombly*,
 550 U.S. 544 (2007) .................................................. 52, 53, 63

*Bogue v. Ampex Corporation*,
 976 F.2d 1319 (9th Cir. 1992).............. 31, 32, 35, 36, 37, 38, 39, 48, 50, 51, 53

*Braden v. Wal-Mart Stores, Inc.*,
 588 F.3d 585 (8th Cir. 2009)........................................... 53, 54

*Council of Insurance Agents & Brokers v. Molasky-Arman*,
 522 F.3d 925, (9th Cir. 2008)...............................................67

*Cousins v. Lockyer*,
 568 F.3d 1063 (9th Cir. 2009)............................................53

*Curtiss-Wright Corporation v. Schoonejongen*,
 514 U.S. 73 (1995) ............................................................41

*Delaye v. Agripac, Inc.*,
 39 F.3d 235 (9th Cir. 1994)........................ 22, 26, 34, 36, 37, 48, 49, 50, 51, 53

*Donovan v. Dillingham*,
 688 F.2d 1367 (11th Cir. 1982)..........................................63

*Edwards v. Lockheed Martin Corporation*,
 954 F. Supp.2d 1141 (E.D. Wash. 2013) ...................... 22, 27, 50, 51

*Fort Halifax Packing Company v. Coyne*,
 482 U.S. 1 (1987) ................... 9, 21, 25, 26, 31, 32, 33, 34, 37, 38, 46, 48, 49, 50

*Golden Gate Restaurant Association v. City & County of San Francisco*,
 546 F.3d 639 (9th Cir. 2008)........................... 22, 25, 27, 37, 50, 51, 53

*Harris v. Amgen, Inc.*,
 573 F.3d 728, (9th Cir. 2009)..............................................65

*Howard Jarvis Taxpayers Association v. California Secure Choice Retirement Savings Program*,
  997 F.3d 848 (9th Cir. 2021)................................................................37

*Howard v. Shay*,
  100 F.3d 1484 (9th Cir. 1996)..............................................................9

*In re Tracht Gut, LLC*,
  836 F.3d 1146 (9th Cir. 2016)..............................................................40

*Innova Hospital San Antonio, Limited Partnership v. Blue Cross and Blue Shield of Georgia, Inc.*,
  892 F.3d 719 (5th Cir 2018) ......................................................... 53, 54

*Inter-Modal Rail Employees Association v. Atchison, Topeka & Santa Fe Railroad Company*,
  520 U.S. 510 (1997) ........................................................... 25, 41, 42

*Kanne v. Connecticut General Life Insurance Company*,
  867 F.2d 489 (9th Cir. 1988)..............................................................52

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018)......................................................... 28, 58

*Kroessler v. CVS Health Corporation*,
  977 F.3d 803 (9th Cir. 2020)......................................................... 30, 65

*Lee v. Los Angeles*,
  250 F.3d 668 (9th Cir. 2001)..............................................................52

*Manzarek v. St. Paul Fire & Marine Insurance Company*,
  519 F.3d 1025 (9th Cir. 2008)............................................... 27, 45, 51, 62

*Massachusetts v. Morash*,
  490 U.S. 107 (1989) ...................................................... 31, 32, 34, 62

*McMillian, et al v. X Corp. f/k/a Twitter*,
  No. 3:23-cv-03461, No. 38 (N.D. Cal. Jan. 09, 2024) ...........................19

*Munro v. University of Southern California*,
  896, F.3d 1088 (9th Cir. 2018)...........................................................59

*Oregon Teamster Employers Trust v. Hillsboro Garbage Disposal, Inc.*,
  800 F.3d 1151 (9th Cir. 2015)...........................................................47

*Pension Benefit Guaranty Corporation ex rel. St. Vincent Catholic Medical Centers Retirement Plan v. Morgan Stanley Investment Management Inc.*,
    712 F.3d 705 (2d Cir. 2013)..................................................................53

*Salas v. United States*,
    116 F.4th 830 (9th Cir. Aug. 27, 2024)...............................................51

*Schobinger v. Twitter Inc. et al.*,
    No. 23-cv-03007 (N.D. Cal.)................................................................57

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011)..............................................................60

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir.1991).................................................................65

*United States v. Mett*,
    178 F.3d 1058, (9th Cir. 1999).............................................................17

*Varity Corporation v. Howe*,
    516 U.S. 489 (1996) ............................................................................62

*Velarde v. PACE Membership Warehouse, Inc.*,
    105 F.3d 1313 (9th Cir. 1997)........................ 22, 26, 30, 36, 37, 48, 49, 50, 51, 53

*Winterrowd v. American General Annuity Insurance Company*,
    321 F.3d 933 (9th Cir. 2003)................................................. 28, 41, 42, 50, 51, 63

*Zavora v. Paul Revere Life Insurance Company*,
    145 F.3d 1118 (9th Cir. 1998)....................................................... 21, 52

**Statutes**

28 U.S.C. § 1291 ...................................................................................12

28 U.S.C. § 1331 ............................................................................ 12, 68

29 U.S.C. §§ 1001 *et seq.* ...................................................... 12, 16, 68

29 U.S.C. § 1001(b). ............................................................................31

29 U.S.C. § 1002(3) .............................................................................31

29 U.S.C. § 1024(b)(1) ................................................................ 9, 25, 41

29 U.S.C. § 1102(b)(3) ................................................................... 25, 41

29 U.S.C. § 1104(a)(1) .........................................................................62

29 U.S.C. §§ 1132(a)(1)(B) ........................................................... 12, 68

29 U.S.C. § 1132(a)(2) .................................................................... 12, 68

29 U.S.C. § 1132(a)(3) .................................................................... 12, 68

29 U.S.C. § 1132(e)(1) .................................................................... 12, 68

# INTRODUCTION

This case involves Defendant Elon Musk's failure to pay severance benefits pursuant to an existing welfare benefits plan under the Employee Retirement Income Security Act ("ERISA") after he acquired Twitter and laid off thousands of employees. While numerous cases have alleged Musk violated various laws and failed to honor Twitter's agreements in the aftermath of the takeover, this is the only case seeking to enforce the severance plan for nonexecutive employees under ERISA.

ERISA was enacted to provide sweeping protections for employee benefit plans. The law broadly applies to benefit plans to preempt related state and local laws and imposes on fiduciaries duties that are "the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (internal citation omitted). Additionally—and importantly for this case—ERISA mandates that employer-provided benefit plans receive ERISA's broad protections regardless of whether employers intended to create an ERISA-governed plan, *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 18, n.10 (1987), and ERISA prohibits employers from modifying or terminating an ERISA-governed plan without following formal procedures and notice to participants, 29 U.S.C. § 1024(b)(1).

If the district court's decision is allowed to stand, these protections will be largely eviscerated. Employers will be able to deprive employees of plan benefits

safe in the knowledge that a court will merely assume when an employer refused to pay benefits that the plan was amended to eliminate those benefits.

Here, Participants allege Twitter has had a long-standing policy and practice of providing severance benefits that long pre-dates Musk's takeover of Twitter; the district court failed even to address whether this constituted an ERISA-governed plan. The court avoided the issue entirely by asserting that the plan was "discontinued or modified greatly" as of the time Musk acquired Twitter. ER-26. This conclusion is contrary to the parties' pleadings and arguments: there are no allegations that the Twitter Severance Plan had been amended as of the time Musk took over Twitter. Rather, the district court jumped to this conclusion on its own, misconstruing allegations in the Complaint and ignoring ERISA's provisions requiring that plan amendments be formal. In doing so, the court allows an employer to withhold benefits without notice or explanation, contrary to ERISA's mandate.

Failing to address the Plan as Participants pled it, the court then unilaterally redefined the alleged Plan to exclude components of the Plan and held that this redefined plan was not governed by ERISA. In doing so, the court misunderstood and misapplied precedent, failing to evaluate the Plan from a plan-wide perspective and mistakenly concluding that the Twitter Severance Plan did not implicate an ongoing administrative scheme.

The court also failed to assume the truth of Participants' reasonable allegations, improperly drew multiple inferences in favor of Twitter and Musk at this motion to dismiss stage, and denied Participants' motion to amend the Complaint. For these reasons, the district court decision must be reversed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, and is brought under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3).

The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291 over the final judgment entered by the district court on July 31, 2024. ER-3. The final judgment disposes of all parties' claims. Participants timely filed their notice of appeal on August 14, 2024. ER-77-78. Participants request oral argument on this matter.

## STATUTORY AUTHORITY

All relevant statutory authorities appear in the Addendum to this brief.

## ISSUES PRESENTED

I.      Whether the district court erred in concluding that Participants had not
        alleged a plan governed by ERISA where Participants pled a severance
        plan that required an ongoing administrative scheme.

II.     Whether the district court erred in finding that the Twitter Severance Plan
        had been discontinued or modified as of October 27, 2022, without first
        determining whether the Twitter Severance Plan that existed at least since
        2019 was an employee welfare benefit plan under ERISA, and, if so,
        whether the Twitter Severance Plan was properly amended pursuant to
        ERISA.

III.    Whether the district court erred by failing to analyze the Plan at a plan-
        wide level.

IV.     Whether the district court erred in holding that the Twitter Severance
        Plan did not implicate sufficient discretion.

V.     Whether the district court erred in applying the wrong standard to Twitter's and Musk's motion to dismiss by failing to accept Participants' allegations as true and failing to construe the pleadings in the light most favorable to Participants.

VI.    Whether the district court erred in denying Participants leave to amend their ERISA claims without giving Participants an opportunity to cure.

## STATEMENT OF THE CASE

Plaintiffs Courtney McMillian and Ronald Cooper on behalf of themselves and a potential class of similarly situated individuals ("Plan Participants" or "Participants") allege that Twitter, now called X Corp.,[1] has maintained a policy and practice of providing severance packages to eligible departing employees, making determinations pursuant to an intricate matrix of factors, with dedicated staff from multiple departments administering benefits. ER-47 ¶ 2; ER-51 ¶¶ 27-28. This policy, the Twitter Severance Plan, has been in effect since at least 2019, yet Twitter failed to pay the severance benefits to the Participants, which include thousands of employees terminated after Musk's takeover of Twitter in October 2022. ER-57 ¶¶ 66-71. Participants allege that the Twitter Severance Plan is governed by ERISA, 29 U.S.C. §§ 1001 *et seq*. ER-47 ¶ 1. Twitter and Musk denied that Twitter maintains an ERISA-governed severance plan, Dkt. 38, and the U.S. District Court for the Northern District of California agreed and dismissed Participants' claims, ER-12.

---

[1] Twitter was purchased by Defendant Elon Musk in October 2022 and subsequently became X. Corp. Plan Participants use the terms Twitter and X Corp. interchangeably, unless otherwise indicated. The transaction was structured as a merger; therefore, Participants use "merger" and "takeover" interchangeably herein.

## I.     The Twitter Severance Plan

Twitter has had a policy and practice of providing severance benefits to eligible employees since at least 2019. ER-47 ¶ 2. This Twitter Severance Plan is detailed in company-created documents. ER-51 ¶ 27. Twitter personnel who administered the Severance Plan used a matrix to determine an employee's eligibility for severance, the amount and type of severance payments, ER-51 ¶ 28, and the length of outplacement services an eligible employee receives under the Plan, ER-52 ¶ 31.[2] The Twitter Severance Plan provides severance benefits in the event of an eligible employee's departure. ER-51 ¶¶ 27-28. Participants allege that Twitter evaluates whether each departing employee is eligible for severance benefits based on the reason for and circumstances of their departure. ER-51 ¶ 29; ER-52 ¶ 30. If an employee is eligible, the amount of severance benefits depends on several factors, including the employee's tenure, job level, department, restricted stock unit issuance, the price of the RSUs at the time of departure, whether an employee is eligible for bonuses, whether an employee was enrolled in

---

[2] The matrix was filed as an exhibit to the original complaint in this action. Dkt. 1-1. At Twitter's and Musk's request, the matrix was sealed pending a determination of whether Twitter's claim of privilege over the matrix is valid. ER-71-76. Such determination may require that the court first determine whether Twitter's severance plan is governed by ERISA, as the fiduciary exception may apply. *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999) ("[A]n employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration.") (internal citation omitted).

Twitter's healthcare coverage, whether an employee's departure entailed any legal risk for the company, and other factors. ER-51-52 ¶¶ 29-30. Twitter tasks employees from many departments with administering the Plan, ER-52 ¶ 34, including the then-Head of People Experience, Plaintiff Courtney McMillian. Participants allege that the Plan has internal procedures for amendments, which require senior leadership approval and occurred numerous times since 2019, ER-52 ¶ 35.

In April 2022, Elon Musk announced his plan to buy Twitter. ER-53 ¶ 40. Twitter and Musk entered into a merger agreement, and the takeover was scheduled to happen in October 2022. ER-53 ¶ 40. The merger agreement provided that the Twitter Severance Plan would continue, and the company provided general information about the Plan. ER-53 ¶ 41; ER-54 ¶¶ 44-49; ER55 ¶¶ 50-51. Twitter terminated Plaintiff Courtney McMillian, Plaintiff Ronald Cooper, and approximately 6,000 other employees after Musk's takeover. ER-48 ¶¶ 5-6; ER-57 ¶¶ 66-70. Twitter failed to provide severance benefits to eligible terminated employees consistent with the Twitter Severance Plan. ER-57 ¶ 71.

Participants pled that Musk decided to deny severance benefits because of the cost to Twitter, and ultimately to Musk as the owner of Twitter. ER-63 ¶¶ 105, 108; ER-64 ¶ 115. Musk and Twitter failed to ensure the Plan had access to sufficient funds to pay severance benefits, ER-64 ¶¶ 113-14, and withheld

information and misled employees about severance benefits, ER-48 ¶ 4; ER-56 ¶¶
59-62; ER-57 ¶¶ 63-65; ER-66 ¶ 124.

McMillian and Cooper filed suit on July 12, 2023,[3] alleging that the Twitter
Severance Plan was an employee welfare benefit plan under ERISA, and that
Twitter, Musk, and others refused to pay the owed benefits under the Plan and
violated their fiduciary duties towards the Plan and Plan participants. ER-47-70.
On January 9, 2024, Twitter and Musk filed a Motion to Dismiss. *McMillian, et al
v. X Corp. f/k/a Twitter*, No. 3:23-cv-03461, No. 38 (N.D. Cal. Jan. 09, 2024) (not
included in the Excerpt of the Record).

After briefing on the motion to dismiss, the district court cancelled oral
arguments and ordered the parties to respond to eight questions, including
questions about other companies with "the same alleged ERISA plan," the names
of "individuals who signed the documents constituting the alleged ERISA plan," a
list of all other cases filed against Twitter or Musk for the failure to pay wages or
benefits, the documents that provide the framework for the alleged Twitter
Severance Plan, and whether the "Severance Matrix" is one of those documents.
ER-38-40. Participants responded in part that Twitter "memorialized its severance
policy in a 'Severance Matrix'" and that "[a] summary of the Severance Matrix
was provided to employees in a May 2022 e-mail and in May 2022 and October

---

[3] Participants amended their complaint on October 13, 2023.

2022 entries in 'Twitter Acquisition; Tweep FAQs,' ('FAQs') first published to employees in April 2022 and regularly updated through October 2022." ER-28. Participants noted that whether these documents meet the requirements of a "plan document" under 29 U.S.C. § 1102(a) should be decided after discovery reveals the universe of related plan documents. ER-29.

## II.    The District Court Decision

On July 9, 2024, the district court granted Twitter's and Musk's motion, holding that ERISA does not apply to the Twitter Severance Plan and denying Participants leave to amend any ERISA-based claim.

The court described the Twitter Severance Plan, ER-6-12, acknowledging that Participants alleged it had existed since at least 2019, ER-7, and that a matrix was used to determine eligibility for severance and the amount and type of severance an eligible employee would receive, ER-8. The court also noted that Participants alleged that the eligibility for severance and amount of severance depends on several factors, "including the reason for the departure, an employee's tenure at the company, job level, department, restricted stock unit (RSU) issuance and price of RSUs at the time of departure, whether the employee's departure entailed any legal risk for the company, and other factors." ER-8. The court explained that Participants alleged numerous employees from several departments effectuated the Twitter Severance Plan. ER-10.

The court explained that severance benefit plans are governed by ERISA where there is an "ongoing administrative program for processing claims and paying benefits." ER-16-17 (quoting *Fort Halifax*, 482 U.S. at 12). The court also declared that "[t]he existence of an ERISA plan is a question of fact." ER-16 (quoting *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1120 (9th Cir. 1998)). The court analyzed whether Twitter had established a plan that required an ongoing administrative scheme, and was thus subject to ERISA, by looking at summaries and communications about the Plan during and after the takeover. ER-17-18; ER-21; ER-23; ER-25. The court did not address what it called "the earlier plan" that Participants alleged existed since at least 2019, because the court determined it "was discontinued or modified greatly." ER-26. The court held that severance benefits were to be paid "at one point in time [after Musk's layoffs] without any 'ongoing particularized discretion,'" and, therefore, there was not an ongoing administrative scheme. ER-17.

The court implicitly acknowledged there may have been discretion in the Plan that Participants pled existed before the takeover, but the court determined that it "d[id] not need to address" these discretionary aspects because it was "not reasonable for the Court to infer that the litigation risk and 'other factors' were part of the severance plan after Twitter's takeover." ER-22-23. The court held there was no discretion in determining severance benefit amounts because the severance

payments involved "mathematical calculations." ER-17-18. The court cited *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 546 F.3d 639, 650-51 (9th Cir. 2008), ER-18, a case involving not an employer benefit plan, but a government benefit scheme akin to a tax, and *Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997), ER-17, a case involving a one-time plant closing. The court further held that the Plan did not require an ongoing administrative scheme because it only required "a one-time distribution," citing to *Delaye v. Agripac, Inc.*, 39 F.3d 235, 238 (9th Cir. 1994), a case involving benefits to only a single employee, ER-21. The court also concluded there was no discretion in determining severance benefit eligibility because "it is reasonable to infer . . . that all employees were eligible regardless of the reason for termination." ER-22. The court distinguished *Edwards v. Lockheed Martin Corp.*, 954 F. Supp.2d 1141, 1151 (E.D. Wash. 2013), aff'd 617 F.App'x 648 (9th Cir. 2015), a case finding "it would have been exceedingly difficult for Defendant to have administered the program [involving 2,263 employees] without an administrative scheme in place," on the basis of the court's inference that all employees were eligible for the Twitter Severance Plan, unlike in *Edwards*, ER-21-22.

The court based its conclusion that Participants failed to "state sufficient facts to show that discretion needs to be exercised in applying the terms of the Twitter severance plan" in part on a decision in another case filed by a former

Twitter employee related to paying employees' bonuses following Musk's takeover. ER-18-20. In that case, the court determined that the plaintiffs were attempting to enforce post-takeover promises rather than Twitter's discretionary bonus plan that pre-dated the takeover. The district court imposed that rationale onto this case and decided that Participants were seeking to enforce post-takeover promises about severance rather than the Twitter Severance Plan that pre-dated the takeover. ER-20.

Similarly, the court found it "reasonable to infer" that any outplacement services provided "after October 2022" were "probably a cash equivalent of those outplacement services" that required no administrative scheme and that "Twitter would have no further obligations or responsibilities" regarding the outplacement services. ER-21. The district court also suggested that the Twitter Severance Plan is not subject to ERISA because the Participants did not plead facts showing "a risk of mismanagement of the funds or other abuse." ER-24.

Finally, the court noted that "Plaintiffs . . . no longer have access to the earlier plan," because the Plan that Participants alleged had been "discontinued or modified greatly." ER-26. Therefore, "[t]he relevant plan is the severance plan that applied after the October 27, 2022 takeover," and Participants could not amend the Complaint to state a claim under ERISA. ER-26. The court concluded that

Participants lacked constitutional standing. ER-26. Finding that the Plan is not governed by ERISA, the court did not address Defendants' other arguments.

## SUMMARY OF THE ARGUMENT

**I.**     ERISA provides broad and sweeping protections and protects

employee benefit plans regardless of whether an employer intended to create an

ERISA-governed plan. *Fort Halifax*, 482 U.S. at 18, n.10. An employer creates an

ERISA-governed plan where there is a program of administering benefits that

implicates an "ongoing administrative scheme." *Fort Halifax*, 482 U.S. at 12.

While the Plan here has been ongoing for years, the district court analyzed the Plan

as if it involved only a set of one-time payments. It did not. The district court thus

assessed whether there was more than "a modicum of discretion" in administering

the purported one-time payments, because even plans involving only one-time

payments can be ongoing administrative schemes if they implicate sufficient

discretion. ER-16 (quoting *Golden Gate*, 546 F.3d at 650).

**II.**     The court held that the Twitter Severance Plan did not implicate

sufficient discretion and an ongoing administrative scheme by committing several,

intertwined errors.

**II.A.**     ERISA sets forth statutory requirements that amendments be written

and provided to employees. 29 U.S.C. § 1024(b)(1); 29 U.S.C. § 1102(b)(3). The

Supreme Court has made it clear that an employer must follow formal procedures

to amend an ERISA plan; informal amendments are not permitted. *Inter-Modal*

*Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515

25

(1997). Neither party here argued that the Twitter Severance Plan had been amended. Nevertheless, the district court concluded sua sponte without citation or analysis that the Plan had "been discontinued or modified greatly" and was no longer the "relevant plan." ER-26. The court's conclusion was contrary to the record and ERISA caselaw. Concluding that the Plan had been amended led the court to disregard certain elements of the Plan that demonstrate it implicated an ongoing administrative scheme and existed before Musk's takeover of Twitter.

**II.B.**    ERISA governs plans, not merely benefits. *Fort Halifax*, 482 U.S. at 7. Whether an ongoing administrative scheme is implicated must be analyzed plan-wide from the point of view of the employer, not the employee, and the fact that an employee is terminated and paid only once does not negate the existence of an ongoing administrative scheme from the point of view of the employer who must make severance eligibility and amount determinations repeatedly for each employee. *See Fort Halifax*, 482 U.S. at 14, n.9. The district court erred by analyzing the Plan not at the plan level, but at the level at which it was applied to individual employees. Only by failing to assess the Plan at the plan level was the court able to equate the Twitter Severance Plan (which applied on an ongoing basis to thousands of employees over years), to the Ninth Circuit's rulings finding no ongoing administrative scheme in *Delaye*, 39 F.3d at 238 (where an employer promised benefits to only a single employee), and *Velarde*, 105 F.3d at 1317

(which involved a one-time plant closing). Assuming an amendment and failing to assess the Plan at the appropriate level enabled the court to disregard components of the Plan that implicated an ongoing administrative scheme and discretion.

**II.C.**    Where discretion is required to show an ongoing administrative scheme, it is only "more than a modicum" discretion. *Golden Gate*, 546 F.3d at 650. It is met where an employer must make decisions on eligibility, award adjustments, interpretation of plan terms, and claims procedures. *Edwards*, 617 Fed. Appx. at 649. The Twitter Severance Plan required Twitter to assess an employee's reason for termination, litigation risk, and "other factors," and also provided that Twitter executives could assess and make adjustments to the overall severance package. The district court erred in holding that this level of discretion was insufficient to establish an ERISA plan.

**II.D.**    At this motion to dismiss stage, the court is required to accept facts alleged in the complaint as true and draw all reasonable inferences in a plaintiff's favor. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The district court here did the opposite, ignoring the Plan existed as Participants pled it (including that not all employees were eligible for severance benefits, benefits were not determined solely by mathematical formula, and benefits did not solely require a one-time lump-sum payment). Instead, the court assumed that components of the Plan did not apply and that Participants'

27

allegations were not as pled. The district court compounded this error by accepting

facts alleged in a separate lawsuit as true, even though they were disputed by facts

alleged by Participants, contrary to Ninth Circuit precedent prohibiting courts from

taking judicial notice of disputed facts from other lawsuits. *See Khoja v. Orexigen*

*Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). The district court's

assumptions regarding incorrect facts led it to conclude that the Twitter Severance

Plan lacked an ongoing administrative scheme and sufficient discretion to come

under ERISA governance.

**II.E.**     ERISA governs those plans that "enable reasonable persons to

ascertain the intended benefits, beneficiaries, source of funding, and procedures for

receiving benefits." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 321 F.3d 933, 938-39

(9th Cir. 2003). "Very few offers to extend benefits will fail the [reasonably

ascertainable] test . . . , which requires neither formalities nor elaborate details." *Id*.

at 939. While the district court did not address whether the Plan satisfies this

reasonably ascertainable requirement, the Complaint pleads that the elements of

the Plan and those elements are set forth in plan documents, including a matrix.

Therefore, the Complaint adequately pleads facts sufficient to meet the reasonably

ascertainable test at the pleading stage.

28

**III.** Finally, even if the court were correct to dismiss Participants' claims (which it was not), the court erred in refusing to allow Participants to amend their ERISA claims. The district court's dismissal order states eleven times that Participants have failed to plead sufficient facts, ER-18; ER-20; ER-22, yet the court did not give participants the opportunity to address this by adding additional facts. The court's conclusion that amendment would be futile and Participants would be unable to overcome the issue of constitutional standing was based on the same flawed inferences that led the court to incorrectly conclude that the Plan had been amended and did not implicate an ongoing administrative scheme.

The Complaint alleges sufficient facts at the pleading stage supporting the existence of an ongoing administrative scheme and discretion for the Twitter Severance Plan to be a "plan" under ERISA. The Court should reverse the district court's dismissal of Participants' claims and remand the case to proceed to discovery.

## STANDARD OF REVIEW

The Ninth Circuit reviews *de novo* a district court's dismissal of a case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Kroessler v. CVS Health Corp.*, 977 F.3d 803, 807 (9th Cir. 2020). On review, the Ninth Circuit must accept the Participants' allegations as true and construe them in the light most favorable to Participants. *Id*. A district court should dismiss a complaint only if it fails to plead facts that can plausibly state a claim. *Id*. The determination of whether a severance program is governed by ERISA is also reviewed *de novo*. *Velarde*, 105 F.3d at 1316.

## ARGUMENT

### I.     Background on ERISA

#### A. ERISA is notoriously broad and governs severance plans.

The Employee Income Retirement Security Act, or ERISA, is a far-reaching federal statute passed in 1974 to fortify employee benefits and create consistent procedures for employers managing benefits. 29 U.S.C. § 1001(b).

ERISA's application is "notoriously broad." *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1322 (9th Cir. 1992). "ERISA covers 'employee benefit plans,' which it defines as plans that are either 'an employee welfare benefit plan,' or 'an employee pension benefit plan,' or both." *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989) (quoting 29 U.S.C. § 1002(3)). An employee welfare benefit plan is defined as "any plan, fund, or program" that is "established or is maintained by an employer" and "for the purpose of providing" benefits, including benefits for "unemployment," also called severance. *Id.*

The Supreme Court explained that ERISA governs employee benefit *plans*, and not merely the provision or offering of employee benefits. *Fort Halifax*, 482 U.S. at 7. This is because ERISA preemption was designed to "eliminat[e] the threat of conflicting or inconsistent . . . regulation of employee benefit plans." *Id.* at 9 (internal quotation omitted). Plans, and not the mere offering or provision of benefits, would suffer if the employer were unable to establish a "uniform

31

administrative scheme" with a "set of standard procedures to guide processing of claims and disbursement of benefits." *Id.*; *see also Bogue*, 976 F.2d at 1323.

If an employer benefit plan is a plan, fund, or program, it is governed by ERISA regardless of whether the employer intended it to be an ERISA-governed plan. "The fact that the employer has not complied with the requirements of ERISA . . . does not . . . mean that no such program for paying benefits was in existence." *Fort Halifax*, 482 U.S. at 18, n.10. "Whether or not [the employer] ever thought it would have to administer an ERISA plan does not matter." *Bogue*, 976 F.2d at 1323.

The Supreme Court has noted that "plans to pay employees severance benefits . . . are employee welfare benefit plans within the meaning of [ERISA]." *Morash*, 490 U.S. at 116.

**B. Supreme Court and Ninth Circuit caselaw establish severance plans are governed by ERISA if they implicate an ongoing administrative scheme.**

While ERISA does not further define "plan, fund or program," *Morash*, 490 U.S. at 114, the Supreme Court and Ninth Circuit have held that benefit plans are ERISA-governed if they implicate an ongoing administrative scheme.

**C. The Supreme Court has established that a benefit plan must implicate an "ongoing administrative scheme" to be subject to ERISA.**

The seminal Supreme Court decision defining what is governed by ERISA is *Fort Halifax*. The Court held that a benefit program is a plan governed by ERISA

32

where there is a "uniform administrative scheme" with a "set of standard procedures to guide processing of claims and disbursement of benefits." *Id.* at 9. Plans include programs where an employer "makes a commitment to systematically pay certain benefits," the administration of which requires "a host of obligations, such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records." *Id.*

For this reason, the Court in *Fort Halifax* held that the employer's "one-time, lump sum payment triggered by a single event"—a plant termination, which was "a single contingency that may never materialize"—was not a plan and not governed by ERISA. *Id.* at 12. "The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." *Id.* The lump sum payment triggered by the plant termination was not a plan because "the employer assume[d] no responsibility to pay benefits on a regular basis, and thus face[d] no periodic demands on its assets." *Id.* Notably, the word "discretion" does not appear in the Supreme Court's decision. *See generally id.*

The Court made clear that whether a program implicated "a one-time obligation" was viewed from the perspective of the employer and not the beneficiaries. *Id.* at 14, n.9. For example, the Court pointed out that an employer

33

program providing one-time death benefit payments to beneficiaries is an ERISA-governed plan even though each beneficiary receives a lump sum payment only once. *Id.* This is because the employer's distribution of benefits is done on an ongoing basis. *Id.* "While death benefits may represent a one-time payment from the perspective of the beneficiaries, the employer clearly foresees the need to make regular payments to survivors on an ongoing basis." *Id.*

The Supreme Court has also indicated that a benefit dependent on an employee's termination, like a severance plan, is governed by ERISA. *Morash*, 490 U.S. at 115-16. The Court noted that a company's policy of paying discharged employees for their unused vacation time was not an ERISA-governed plan because it was akin to wages that are not dependent on an employee's termination or another "contingenc[y] outside of the control of the employee." *Id.*

### D. The Ninth Circuit adopted the ongoing administrative scheme standard.

The Ninth Circuit has reiterated the *Fort Halifax* standard in determining what is governed by ERISA. "From the fountain of *Fort Halifax*, and the stream of circuit cases that have flowed from it, a relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Delaye*, 39 F.3d at 237.

i.   One-time payments can be ERISA plans.

The Ninth Circuit has broadly defined the ongoing administrative scheme requirement, holding it can apply even to severance programs where an employer makes one set of payments, as opposed to ongoing and consistent payments to many employees over time.

*Bogue* dealt with a severance package for ten employees that had a "limited time frame" and was contingent on whether the company terminated those ten employees in a corporate acquisition. 976 F.2d at 1322. The Ninth Circuit noted that these characteristics "might suggest" that the plan did not implicate an ongoing administrative scheme. *Id.* Despite these indicators to the contrary, the court found the program required an ongoing administrative scheme and was subject to ERISA because the administrator would be obligated to determine each employee's eligibility—a determination that under the severance program required the administrator to assess "whether a complaining employee's job was 'substantially equivalent' to his pre-acquisition job." *Id.* at 1323. Even though the program was not ongoing in the sense that it applied to multiple employees as they were terminated over time, the program nevertheless required an administrative scheme to make these determinations and therefore "there was no way to administer the program without an administrative scheme." *Id.*

The Ninth Circuit further addressed the circumstances under which one-time payment plans nevertheless implicate an ongoing administrative scheme in *Delaye*, 39 F.3d at 237-38 and *Velarde*, 105 F.3d at 1316-17. In *Delaye*, the Ninth Circuit held that administering the fixed compensation benefits provided for in one individual's employment contract did not constitute a uniform ongoing administrative scheme. 39 F.3d at 237. The court noted that the severance program was not ongoing—it applied only to one employee—and that there was no ongoing discretionary analysis in determining the employee's eligibility for benefits like there was in *Bogue*, where the employer was required to make eligibility assessments for ten employees. *Delaye*, 39 F.3d at 237-38.

*Velarde* also did not involve an employer making continuous eligibility determinations or ongoing payments to employees terminated from the company over the course of years. 105 F.3d at 1315. In *Velarde*, the employer agreed to make payments only to those employees who were terminated due to a one-time plant closing. *Id*. While the court recognized that an employer's one-time payment could constitute an ERISA plan, this was only if there was "'*enough* ongoing, particularized administrative discretionary analysis' . . . to make the plan an 'ongoing administrative scheme.'" *Id.* at 1317 (quoting *Bogue*, 976 F.2d at 1323) (emphasis in original). In other words, an employer making one-time payments could nevertheless have a uniform ongoing administrative scheme within the

36

meaning of *Fort Halifax* if there was sufficient discretion involved in the one-time payments. *Id.*

### ii. Unlike employer benefit cases, government program cases are subject to a presumption against preemption.

*Bogue*, *Delaye*, and *Velarde* dealt with whether an employer's offer of benefits established an ERISA plan, and subsequent Ninth Circuit cases addressed the different scenario of whether local or state laws are preempted by ERISA. *See Golden Gate*, 546 F.3d at 639; *see also Howard Jarvis Taxpayers Ass'n v. Cal. Secure Choice Ret. Sav. Prog.*, 997 F.3d 848 (9th Cir. 2021). State and local laws, unlike employer-sponsored programs, enjoy a "presumption against [ERISA] preemption." *Golden Gate*, 546 F.3d at 647. In addition to the presumption against preemption, the Ninth Circuit found the government program was not subject to ERISA because it merely required the employer to issue payments akin to a tax or social security withholding. *Golden Gate*, 546 F.3d at 650.

## II. The Complaint alleges sufficient facts to establish that the Twitter Severance Plan implicates an ongoing administrative scheme, and the district court erred in determining otherwise.

The Twitter Severance Plan, as described in Participants' Complaint, is subject to ERISA because it requires an ongoing administrative scheme within the meaning of Supreme Court and Ninth Circuit caselaw. Participants alleged that Twitter established the Severance Plan in or around 2019 and distributed benefits to eligible employees on an ongoing basis since then. ER-47 ¶ 2. Twitter tasked

dedicated staff from numerous departments with making determinations regarding an employee's eligibility for benefits under the Plan, the benefits for which the employee was eligible, the amount of benefits they would receive, processing claims, and distributing benefits. ER-52 ¶¶ 33-34.

The Plan consists of several distinct separation scenarios, each of which implicates a separate set of criteria of parameters based on the employee's role in the company and eligibility for different severance components. ER-51 ¶ 29. In turn, each of these severance components contain separate criteria based on an employee's tenure and levels, as well as the specific information about each employee's participation in company health, bonus, and equity programs. ER-51-52 ¶¶ 29-30. The Plan also provides that each package will individually be assessed and adjusted based on a determination of litigation risk. ER-51 ¶ 29. Eligible employees were within the approximately 7,500 employees potentially covered by the Plan. ER-57 ¶¶ 66-70.

Here, "there was no way to administer the program without an administrative scheme." *Bogue*, 976 F.2d at 1323. The Twitter Severance Plan meets the criteria for establishing a plan under ERISA, as set out by the Supreme Court in *Fort Halifax*, because Twitter implicated a "set of standard procedures to guide processing of claims and disbursement of benefits" and systematically paid severance benefits in a way that required "a host of obligations, such as

determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records." 482 U.S. at 9; *see also Bogue*, 976 F.2d at 1323. The Twitter Severance Plan covered thousands of employees, far more than the ten employees found to require an ongoing administrative scheme in *Bogue*, 976 F.2d at 1321.

The Twitter Severance Plan implicates an ongoing administrative scheme and was thus subject to ERISA. The district court was able to conclude otherwise only by committing a series of errors. The district court incorrectly: (A) concluded that the Plan had been amended after Musk took Twitter over, and therefore, elements of the Plan that indicate it implicated an ongoing administrative scheme no longer applied, (B) failed to interpret the Plan from a plan-wide perspective, (C) failed to find that the Twitter Severance Plan implicated sufficient discretion, and (D) did not accept the facts alleged in the Complaint as true and drew inferences in favor of Twitter and Musk instead of Participants.

## A. The district court erred by concluding that the Twitter Severance Plan had been amended.

The district court's ruling is heavily influenced by its conclusion that the Twitter Severance Plan "was discontinued or modified greatly" and no longer the "relevant plan." ER-26. The district court's conclusion that the Plan had been amended was based on it misconstruing "communications [] made by Defendants

showing that the named Plaintiffs would no longer have access to the earlier plan." ER-26. This conclusion is in error because it is inconsistent with the allegations in the Complaint and arguments made by any party, and it does not comport with ERISA's requirements for amending an ERISA plan.

The Complaint alleges that the severance plan had been in existence since at least 2019 and was in effect at the time of the October 2022 takeover. ER-47 ¶ 2; ER-51 ¶ 27; ER-52 ¶ 377. The Complaint does not allege that the Plan had been amended when Musk took over Twitter, and neither party argued as much in their briefing. The court's inference that the Plan was amended to remove the litigation risk component and other factors from the eligibility and severance determination is contrary to any allegation in the Complaint or assertion by any party. "At the motion to dismiss phase, the trial court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016). It was error for the court to make this inaccurate assumption in Twitter's and Musk's favor. The fact that the Plan has been in existence since 2019 and applied to eligible employees from time to time since then illustrates that the Plan required ongoing administration and was not just a one-time payment of severance to employees terminated after the takeover. Yet the court refused to credit these crucial allegations due to its incorrect conclusion that the Plan must have been amended.

There are no allegations in the Complaint or the parties' pleadings that the Twitter Severance Plan was amended. Rather, the district court looked to Twitter's failure to abide by the plan as evidence that the plan had been amended. ER-26. The district court assumed that because Participants were offered a lump-sum payment less than the amount and benefits described in the Plan, "[t]his shows that it was possible to provide payments to terminated employees in an unthinking, non-particularized, non-discretionary manner," and thus there is no plan. ER-23.

Moreover, the district court's conclusion that the Twitter Severance Plan was "discontinued or modified greatly" runs afoul of Supreme Court and Ninth Circuit precedent establishing that ERISA plans cannot be amended or terminated informally. ERISA sets forth statutory requirements that amendments be written and provided to employees, 29 U.S.C §1024(b)(1) and 29 U.S.C. § 1102(b)(3), so that they are "recognized as fairly serious events and given special consideration they deserve" and that plan administrators can separate "the bona fide amendments" from the "occasional corporate communications . . . that conflict with the existing plan terms," *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 82 (1995); *accord Winterrowd*, 321 F.3d at 937 (same). The Supreme Court has made it clear that an employer must follow formal procedures to amend an ERISA plan. *See Inter-Modal*, 520 U.S. at 515.

If ERISA is to provide any protection at all, plan administrators must not be allowed to use their failure to pay benefits as evidence that the plan was amended.[4] Their failure to pay benefits to eligible plan participants is evidence of an ERISA violation—not evidence that ERISA does not apply. "The formal amendment process would be undermined if . . . employers could 'informally' amend their plans one participant at a time." *Inter-Modal*, 520 U.S. at 515. If the district court's decision allowing informal amendments to ERISA plans is allowed to stand, it will eviscerate ERISA's protections, as an employer could avoid liability in all situations merely by asserting that any ERISA violations were consistent with its new, informally amended plan. If the Plan was not properly amended, any alleged amendment to the original Plan is invalid. *Winterrowd*, 321 F.3d at 937.

The direct result of the district court's conclusion that the Plan had been amended was to disregard allegations in the Complaint indicating the Plan required an ongoing administrative scheme and discretion. For example, the district court held that, because the Plan had been "discontinued or modified," "the complaint could not be amended to state a claim for violation of any earlier severance plans

---

[4] Furthermore, merely because it is "possible" for one to calculate the benefits owed to some employees who are terminated for the same reason and who present the same legal risk to the company, does not mean that it is possible to make these calculations for all Plan participants. ER-23. This is an example of the district court conflating the scope of the Plan with the scope of the potential class, discussed in Section II.B.1.

for which litigation risk and other factors may have been considered." ER-26.

Because the Plan was amended to exclude consideration of litigation risk or any

other factors, the court reasoned, it "[did] not need to address" whether these

components indicated that the Plan implicated discretion. ER-23.

The district court also erroneously inferred that the outplacement services

provided as part of severance benefits under the Plan pre-takeover were "probably

a cash equivalent" as of October 2022. ER-21. This inference against Participants

was another basis for the court's erroneous finding that the Plan did not entail an

ongoing administrative scheme. ER-22-23.

Had the district court included litigation risk, other factors, and

outplacement services in its analysis, it would have had to conclude that the Plan

implicated an ongoing administrative scheme and discretion sufficient to establish

an ERISA plan. Its failure to do so is reversible error.

### B.  The district court erred by failing to analyze the Plan from a plan-wide perspective.

To determine whether an employer's offer of benefits constitutes an ERISA

plan, a court must evaluate the purported plan from a plan-wide perspective—how

the plan applies to *all* participants and how the plan is administered from the

*employer's* perspective.

i.  <u>The district court conflated the terms of the Plan with the application of the Plan to Musk-era layoffs.</u>

Similar to assuming the Plan was amended and thus failing to address whether the alleged pre-takeover Plan is governed by ERISA, the court also erred by assuming that the Plan applied only to employees laid off after Musk's takeover. ER-6. The court thus erred in concluding that "all terminated employees were eligible regardless of the reason for termination," ER-22, and that "Plaintiffs are suing to recover benefits that include a bonus component promised *because of the change in ownership*, or in other words, *because of the mass layoffs*," ER-20 (emphasis added).

The question is not whether an ongoing administrative scheme is required with respect to payments made to class members, as the court suggested, ER-23, but whether the Plan itself implicated an ongoing administrative scheme. The court asked the wrong question, and its answer reflects another fundamental misunderstanding of Participants' factual allegations and ERISA law.

First, by analyzing the Plan only as Twitter applied it to potential class members, the court misconstrued Participants' allegations regarding the Twitter Severance Plan and wrongly concluded that *every* Twitter employee who was terminated was eligible for severance benefits, ignoring the discretionary eligibility assessment required by the Plan. The court's conclusions are inconsistent with allegations in the Complaint that the Plan had been in effect for years before the

44

takeover and required consideration of multiple factors in determining eligibility and the amount and type of severance. ER-51 ¶¶ 27-29. Participants alleged the Plan applied to those terminated employees who met the eligibility criteria since at least 2019. ER-51 ¶¶ 28-29. While Twitter communicated about the Plan to employees around the time of Musk's takeover, there is no indication or allegation that any of these communications amended the Plan. *See supra* at 40. As explained above, the Plan as Participants pled it required Twitter to make discretionary determinations about participants' eligibility and the reason for an employee's termination. ER-51 ¶ 29. For some types of terminations, the Plan also required Twitter to assess how much of each benefit category to award the employee. ER-51 ¶ 29. The court must accept these allegations as true. *Manzarek*, 519 F.3d at 1031; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Regardless of whether *all members of the potential class* were terminated for the same reason, the inference that *all Plan participants* would be eligible for benefits and terminated for the same reason is nonsensical and contrary to Participants' allegations that an employee's eligibility for severance was "dependent on several factors, including the reason for the departure," an allegation the court acknowledged. ER-8; *see also* ER-51 ¶ 29. While it may be that Twitter made these discretionary determinations in the same way for some groups of employees affected by the same layoffs, this has no bearing on the Plan

45

terms or how Twitter made these determinations for Plan participants who received benefits before Musk's takeover. Not only is there no basis to reach the inference in favor of Twitter and Musk that all employees were eligible for benefits, but accepting Participants' allegations as true, as is required at the motion to dismiss stage, one must conclude that severance eligibility is dependent on the reasons for the employee's departure.

Second, by reviewing the Plan only as Twitter applied it to the Musk-related terminations, the court's ruling was inconsistent with ERISA law. ERISA governs plans, not merely benefits; the court must look at how the Plan was administered to provide benefits not just to class members, but the Plan as a whole.[5] *See Fort Halifax*, 482 U.S. at 14, n. 9. If discretion is required to establish that an ongoing severance plan is governed by ERISA, the court must look at the level of discretion required by the plan as a whole, not the amount of discretion applied to any individual participant or group of participants. The court thus erred in failing to address whether the Plan required discretion, as it addressed only whether discretion was required in "applying" the plan "to calculate severance benefits *for*

---

[5] This, of course, assumes that it is appropriate to consider the degree of discretion where, as here, benefits are not provided on a one-time basis and there is an ongoing administrative scheme for providing severance benefits. *See infra* at 49-51.

*the employees laid off due to Twitter's takeover.*"[6] ER-18 (emphasis added). The question is not whether Twitter would have had to exercise discretion to assess benefit eligibility for only those employees laid off after Musk's takeover, but rather whether the Plan as described by Participants required an ongoing administrative scheme in administering the Plan as a whole.

Had the court analyzed the Plan as a whole, it would have had to find that Participants pled not a one-time payment after layoffs but a Plan that has been in effect since at least 2019 and that also applied to employees terminated before the Musk layoffs. This Plan has included multiple discretionary components sufficient to constitute an ongoing administrative scheme. ER-51 ¶ 27; ER-52 ¶ 30.

    ii.  <u>The district court analyzed the Plan from the point of view of individual employees rather than the employer.</u>

The district court also erred by repeatedly relying on the assumption that the Plan involved only one-time payments. ER-17; ER-21-22; ER-24. However, the Plan did not involve only one-time payments when analyzed from the perspective

---

[6] The court's fundamental misunderstanding of ERISA is further illustrated by its conclusion that employees participating in other lawsuits would not be eligible to participate in the severance plan. ER-21. To the extent that the Twitter Severance Plan is governed by ERISA, class members would include those Plan Participants pursuing other causes of action, including those for breach of contract. Likewise, because of ERISA's preemption provision, all Plan Participants would be ineligible to bring breach of contract actions. *Or. Teamster Emps. Tr. v. Hillsboro Garbage Disposal, Inc*., 800 F.3d 1151, 1155 (9th Cir. 2015) (upholding district court's dismissal of breach of contract claim as preempted by ERISA).

of the employer rather than each employee, and this is the analysis that the Supreme Court requires. *Fort Halifax*, 482 U.S. at 14, n.9. Focusing on how often a participant receives benefits to determine whether there is an ERISA plan "misunderstands what it is that makes a plan a plan." *Id.* The correct question is whether the employer "foresees the need to make regular payments" in a predictable, ongoing basis and thus must establish an administrative scheme to pay out benefits—even if a particular employee receives benefits only once. *Id*.

Just as the Supreme Court found an employer plan providing death benefits implicates an ongoing administrative scheme even though any individual employee dies only once, the Plan here implicates an ongoing administrative scheme even though each employee is terminated only once. *Id*. Likewise, in *Bogue*, the Ninth Circuit found an ERISA plan existed where, "[a]lthough the program . . . was triggered by a single event, that event would occur more than once, at a different time for each employee." 976 F.2d at 1323. The district court's assumptions that the Plan involved only one-time payments is wholly inconsistent with this Supreme Court and Ninth Circuit caselaw.

The district court's erroneous assumption also led it to conclude this case is similar to *Velarde* and *Delaye*, but it is not. *Velarde* relied on by the district court, ER-17, involved a one-time closing of a warehouse, not ongoing terminations over many years. 105 F.3d at 1317. The employer would satisfy its obligations at one

point in time for all eligible employees, and, therefore, there was no need for an ongoing administrative scheme. *Id.*

Similarly, *Delaye* involved the payment of severance benefits to *only one employee*. 39 F.3d at 238. The court indicated that the plan here does not require an ongoing administrative scheme because it is similar to the plan in *Delaye* since both involve paying a one-time severance benefit to a single employee, ER-24, wholly ignoring the Supreme Court's instruction to assess plans from the perspective of the plan as a whole, not each individual employee, *Fort Halifax*, 482 U.S. at 14 n.9.

Had the court analyzed the Plan from the perspective of the employer rather than Plan participants, the court would have had to hold that the Plan, which has applied to numerous employees over several years, is distinguishable from the plans at issue in *Velarde* and *Delaye* and that it implicates an ongoing administrative scheme governed by ERISA.

### C. The district court erred by holding that the Twitter Severance Plan does not implicate sufficient discretion.

The Twitter Severance Plan included multiple discretionary components. An employee's eligibility for severance was dependent on several factors, including the reason for the departure, whether the employee's departure entailed any legal risk for the company, and "other factors." ER-51 ¶ 29. Twitter human resources

staff could adjust the severance benefits with the approval of Twitter executives. ER-35 ¶ 10.

These determinations are a far cry from the "fixed" payments at issue in *Golden Gate*, 546 F.3d at 651, relied on by the district court, ER-18. The discretion implicated by the Twitter Severance Plan also entails substantially more discretion than the plan at issue in *Fort Halifax*, 482 U.S. at 1. The Plan's discretion is also more than the discretion found to be insufficient in *Delaye*, which involved only a single employee, 39 F.3d at 237, and *Velarde*, where eligibility was based simply on whether the employee was terminated for cause, 105 F.3d at 1317. The level of discretion required by the district court also goes well beyond the discretion the Ninth Circuit found to be sufficient in *Bogue*. 976 F.2d at 1323. Like the plan in *Bogue*, "[t]here [i]s no way to carry out that obligation with the unthinking, one-time, nondiscretionary application of the plan administrators in *Fort Halifax*." *Id*.

The Ninth Circuit has made clear that where discretion is required, it is only "more than a modicum" of discretion. *Golden Gate*, 546 F.3d at 650. It is met where an employer must make decisions on eligibility, award adjustments, interpretation of plan terms, and claims procedures. *Edwards*, 617 Fed. App'x. at 649. The district court's conclusion that the use of a formula to determine severance benefits defeats a finding that severance is a plan under ERISA is also directly inconsistent with *Winterrowd*, in which the Ninth Circuit held that "the

50

specifics of the formula" used to calculate benefits must be identifiable for a plan to be subject to ERISA, a mandate that is impossible to meet if a plan involves too much discretion. *Winterrowd*, 321 F.3d at 939.

A finding of discretion may not even be required here, because the Twitter Severance Plan provides for ongoing payments to thousands of employees, not the one-time lump sum payments at issue in *Bogue*, *Velarde*, and *Delaye*, where the court found that even plans involving one-time lump sum payments can be subject to ERISA if they involve enough discretion to make the plan an ongoing administrative scheme. *See Velarde*, 105 F.3d at 1317. Even assuming discretion is required, the district court erred by holding that the discretion implicated in the Twitter Severance Plan is insufficient to allege an ongoing administrative scheme and a plan under ERISA. Like the *Bogue* and *Edwards* plans, administration of the Twitter Severance Plan required more than a "modicum of discretion." *Golden Gate*, 546 F.3d at 650.

**III.    The district court was required to accept the allegations in the Complaint as true and draw inferences in Participants' favor but failed to do both.**

In ruling on a motion to dismiss, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek*, 519 F.3d at 1031. "[M]aterial allegations, even if doubtful in fact, are assumed to be true." *Salas v. United States*, 116 F.4th 830, 845

51

(9th Cir. Aug. 27, 2024). Whether an employee benefit plan exists under ERISA is a question of fact. *Zavora*, 145 F.3d at 1120; *see also Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1988). Questions of fact are not appropriate for resolution on motion to dismiss because "factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). As discussed below, the district court repeatedly failed to accept as true allegations in the Complaint and drew inferences against the Participants and in Twitter's and Musk's favor. In doing so, the district court, on multiple occasions, misconstrued the allegations in the Complaint and assumed facts not in the record, including facts that are incorrect.

The district court repeatedly concluded that the Complaint does not plead sufficient facts to establish an ERISA plan, ER-18; ER-20; ER-22-25, but held Participants to a higher standard than required at the pleading stage. To survive a motion to dismiss, a complaint must contain only sufficient factual allegations to state a claim to relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

52

unlawfully." *Iqbal*, 556 U.S. at 678 (internal citation omitted). For this reason, most Ninth Circuit decisions determining whether a severance program is subject to ERISA are at the summary judgment or trial stage after full discovery. *See, e.g.*, *Velarde*, 105 F.3d at 1314 (summary judgment); *Golden Gate*, 546 F.3d at 642 (same); *Delaye*, 39 F.3d at 236 (post-trial judgment). The single opinion of the Ninth Circuit decided at the pleading stage found the pleadings adequately established the existence of a plan under ERISA. *Bogue*, 976 F.2d at 1323 (motion to dismiss).

Furthermore, "a complaint need not contain detailed factual allegations." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). Multiple circuits have recognized that this is especially true for ERISA participants pleading breach of fiduciary duty claims because they may not have access to full information about the plan. *See Innova Hosp. San Antonio, Ltd. P'ship. v. Blue Cross and Blue Shield of Georgia, Inc.*, 892 F.3d 719, 728 (5th Cir 2018); *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016); *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). For example, the Fifth Circuit has held that "ERISA plaintiffs should not be held to an excessively burdensome pleading standard that requires them to identify particular plan provisions in

ERISA contexts when it may be extremely difficult for them to access such plan provisions." *Innova Hosp.*, 892 F.3d at 728. The Eighth Circuit has noted that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598.

Here, Twitter and Musk have significantly more information about the Twitter Severance Plan than Participants. No discovery has occurred, and Twitter and Musk have sought to shield details of the Twitter Severance Plan from Participants by, for example, asserting privilege over an alleged Plan document. *See supra* at 17, n.2.

Rather than accept all facts alleged in the Complaint as true and make all inferences in Participants' favor, the district court made multiple factual determinations contrary to the facts alleged in the Complaint and made inferences against Participants. The court held Participants to a higher pleading standard than required at this stage of the litigation and relied on cases decided at the summary judgment stage after full discovery to decide questions of fact. These errors underlie the district court's incorrect conclusion that the Complaint fails to plead the existence of a plan under ERISA.

**A. The district court erred in assuming that all employees are eligible for severance and that severance benefits are determined using only a mathematical formula.**

As one example, the court incorrectly drew inferences against Participants with respect to eligibility and benefit amount determinations. As explained above, Twitter had to evaluate multiple factors to determine: first, whether an employee was eligible for severance and, if so, what severance components the employee was eligible for; and then, the amount of severance benefits to which the employee was entitled. *See supra* at 17.

An employee's eligibility for severance was dependent on several factors, including the reason for the departure, whether the employee's departure entailed any legal risk for the company, and "other factors." ER-51 ¶ 29. Whether employees' departures are for cause or voluntary is often subjective and disputed. The matrix indicates that additional facts would be uncovered in discovery that demonstrate that severance eligibility is not based solely on whether an employee was fired for cause. Despite these allegations, the district court assumed that all employees were eligible for severance, ER-8; ER-18; ER-22-23; ER-26, relying on Participants' allegations that Twitter communicated about the severance in meetings with all employees around the time of Musk's takeover, ER-8. However, simply because Twitter told all employees about a possible severance in the wake of Musk's takeover announcement does not indicate that all employees had been

eligible for severance under the Plan that has existed since 2019, particularly given Participants' specific allegations to the contrary. ER-51 ¶¶ 28-29; ER-52 ¶ 34.

The district court also inferred that the amount of severance could be determined solely based on formula or mathematical calculations. ER-17-22; ER-24. Even assuming that plans with mathematical calculations cannot implicate ongoing administrative schemes, the court's inference is wholly inconsistent with Participants' allegations. Twitter had to determine whether the employee was eligible for bonuses or restricted stock unit grants and whether the employee participated in the company health plan. ER-51 ¶ 29; ER-52 ¶ 30. For each component for which an employee is eligible, Twitter had to determine the amount of severance to which the employee was entitled based on factors including tenure and level. ER-52 ¶ 30. Then Twitter had to determine whether this amount should be altered because the employee's termination entails "litigation risk" for the company. ER-51 ¶ 29. Twitter executives could approve adjustments. ER-35 ¶ 10.

Indeed, in quoting the allegations in the Complaint relating to the factors involved in determining severance benefits, the court cut off its quote from Participants' Complaint, eliminating "whether the employee's departure entailed any legal risk for the company, and other factors." ER-18 (referencing ER-51 ¶ 29). Evaluating legal risk and other factors supports an inference that the

determination of severance benefits required more than mere mathematical calculations, as explained above.

The district court's failure to accept the allegations regarding eligibility and amount determinations in the Complaint as true and draw inferences in Participants' favor caused the district court to conclude erroneously that the Plan does not implicate an ongoing administrative scheme or sufficient discretion.

### B. The district court erred by accepting as true allegations in other lawsuits that are disputed by Participants' allegations.

As another example, the district court assumed that allegations contained in other lawsuits were true even where those allegations are inconsistent with the allegations in Participants' Complaint. The court noted that another court's decision in *Schobinger v. Twitter, Inc. et al.*, No. 23-cv-03007 (N.D. Cal.) "illustrates that the calculation of the bonus component of the severance plan promised to employees one year following the change in ownership or merger was based on a formula and did not involve 'ongoing particularized discretion.'" ER-19. The court detailed how the *Schobinger* plaintiffs described the promised bonuses and inferred that the bonuses allegedly promised to the *Schobinger* plaintiffs were the same as the bonus component in the Twitter Severance Plan. ER-18-19. The court used the allegations in *Schobinger* to support its inference that "the bonus component of the severance plan did not require eligibility determinations, was based on a mathematical calculation, and applied to all employees if the company choose[s] to

provide bonuses," ER-20, which ultimately led to the district court's conclusion that the Plan lacked discretion and did not require an ongoing administrative scheme.

However, Participants' Complaint alleges that the amount of severance depends on factors including an employee's tenure and level, as well as specific information about each employees' participation in company health, bonus, and equity programs, ER-51 ¶ 29, and "whether the employee's departure entailed any legal risk for the company, and other factors," ER-51 ¶ 29, not a mere "mathematical calculation."

While the district court could take judicial notice of the existence of the *Schobinger* allegations and the court's characterization of them, the Ninth Circuit is clear that if a judicially noticeable document contains disputed facts, the court may take judicial notice of the existence of the document, but not the disputed facts. *See Khoja*, 899 F.3d at 999-1000. The district court committed a reversible error by refusing to accept as true the allegations in the Complaint and, instead, assuming the disputed facts alleged in other lawsuits against Twitter[7] are true. The

---

[7] The district court's suggestion that Participants amend their Complaint to join other cases not brought under ERISA evinces yet another fundamental misunderstanding of ERISA. *See* ER-5; ER-11; ER-19-20. Even if it were appropriate to look to other lawsuits and causes of action in determining whether an alleged plan is covered by ERISA, this action provides several advantages over the state law claims asserted in the other actions, and the potential class here and the potential class in any breach of contract action are not "virtually identical," ER-

court then used that information to conclude that the Twitter Severance Plan did not require discretion and therefore is not a plan under ERISA.

### C. The district court erred by concluding that the Plan solely requires a one-time lump-sum payment.

Finally, the district court incorrectly inferred that severance benefits under the Twitter Severance Plan were paid as a lump sum. ER-17; ER-23. However, Participants did not plead that the Severance Plan called for a lump sum for the value of outplacement services. While the district court concluded that the Complaint does not allege sufficient facts to show that the outplacement services required ongoing administration, ER-20, Participants are not required to plead detailed facts at this stage, as explained above in Section II.D, and the court is required to draw inferences in Participants' favor. Here, the district court failed to do so and invented facts out of whole cloth.

---

6, for several reasons. As explained to the district court, ER-42-46, (1) ERISA offers more robust protections by way of the fiduciary duties imposed under ERISA; (2) Musk is an individual defendant in this action due to his fiduciary status, but not in the state law actions; and (3) the Participants' ERISA claims are not subject to arbitration clauses included in Twitter employment agreements because the arbitration clauses exempt claims for benefits under ERISA, and the Ninth Court held in *Munro* that ERISA 502(a)(2) and 409(a) claims are not subject to arbitration clauses in employment agreements because they are brought on behalf of the plan. *See Munro v. Univ. of S. California*, 896 F.3d 1088, 1094 (9th Cir. 2018). Therefore, Participants' claims under ERISA afford the advantage of class-wide resolution, a faster and more efficient process than conducting thousands of individual arbitrations.

The court explicitly inferred that Twitter would have no obligations or responsibilities regarding the third-party outplacement services granted to eligible terminated employees after the services were granted to a terminated employee, ER-20-21, ignoring the equally (if not more) plausible inferences that Twitter was responsible for providing the third-party provider with lists of terminated employees, ensuring that the third-party service provider responded to or even initiated communications with the terminated employees, and/or assessing invoices from the third-party provider and issuing payments. The court contends that the inferences it drew against the Participants were "reasonable," ER-20; however, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[8]

The court also erred by inferring that the Plan had been amended as of October 2022 to remove outplacement services or that the outplacement service benefit had been converted to "probably [] cash equivalent[s]." ER-21. As discussed above, neither party alleged nor argued that the Plan had been amended. The district court's inferences that the outplacement services component of the Twitter Severance Plan did not require ongoing involvement of Twitter staff before

---

[8] Of note, the court's alternative was not advanced by Twitter and Musk.

the takeover, and that, after the takeover, the outplacement services had been
converted to a cash distribution, were improper and in fact wholly made up by the
court with no citation to Participants' Complaint.

### D. The district court erred by suggesting that Participants did not plead facts showing a risk of mismanagement or abuse.

The district court also erred in its suggestion that the Twitter Severance Plan
is not subject to ERISA because the Participants did not plead facts showing "a risk
of mismanagement of the funds or other abuse." ER-24. This conclusion is based
on the premise that the Plan did not allow for any discretion; but as discussed
above, the Complaint pleads sufficient allegations of discretion at the pleadings
stage. *See supra* at 49-51. Moreover, the district court ignores that the Complaint
alleges that Twitter and Musk failed to calculate benefits based on the provisions of
the Plan. ER-57 ¶ 71. Accordingly, Participants did plead facts showing not only
substantial risk of mismanagement or abuse, but also actual mismanagement and
abuse.

Musk withheld information and misled employees about severance benefits,
ER-48 ¶ 4; ER-56 ¶¶ 59-62; ER-57 ¶¶ 63-54; ER-66 ¶124, failed to ensure the Plan
had access to sufficient funds to pay severance benefits, ER-64 ¶¶ 113-14, and
decided to deny severance benefits because of the cost to Twitter, and ultimately
Musk as the owner of Twitter, ER-63 ¶¶ 105, 108; ER-64 ¶ 115. ERISA requires
that those with authority over benefit plans act "solely in the interest of the

participants" and "for the exclusive purpose of providing benefits to participants." 29 U.S.C. § 1104(a)(1). "To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is not to act 'solely in the interest of the participants and beneficiaries.'" *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996). Participants' allegations demonstrate that Twitter and Musk repeatedly acted in their own interest to the detriment of Plan participants, putting the severance benefits at risk of mismanagement and abuse.

Furthermore, while the risk of mismanagement is a policy consideration underlying ERISA, courts do not require a showing of this risk for ERISA to apply. *See Morash*, 490 U.S. at 115. Nevertheless, the district court erred in concluding that there is no risk of mismanagement.

\* \* \*

As indicated by the examples above, the court failed to draw inferences in Participants' favor. In ruling on a motion to dismiss, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek*, 519 F.3d at 1031. The district court repeatedly drew inferences against the Participants and, instead, in Twitter's and Musk's favor. In doing so, the district court, on multiple occasions, misconstrued

the allegations in the Complaint and assumed facts not in the record, including facts that are incorrect.

Participants have alleged sufficient facts to conclude that the Twitter Severance Plan is governed by ERISA, and it is improper for the court to require more from Participants at this stage of the litigation, particularly without the benefit of discovery into all the facts surrounding the Twitter Severance Plan. The Supreme Court has noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable," and drawing inferences in Participants' favor compels the conclusion that Participants have cleared this low hurdle. *Twombly*, 550 U.S. 556. The district court therefore erred by engaging in fact-finding against the Participants at the pleading stage, so its decision must be reversed.

### IV. The components of the Twitter Severance Plan are reasonably ascertainable.

In addition to governing plans that implicate an ongoing administrative scheme, the Ninth Circuit has adopted the Eleventh Circuit's reasonably ascertainable test, which holds that ERISA governs only those plans that also "enable reasonable persons to 'ascertain the intended benefits, beneficiaries, source of funding, and procedures for receiving benefits.'" *Winterrowd*, 321 F.3d at 939 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)). The Ninth Circuit has noted that "[v]ery few offers to extend benefits will fail the

[reasonably ascertainable] test . . . , which requires neither formalities nor elaborate details." *Id.*

The Complaint alleges facts sufficient to ascertain the elements of the Plan. Participants allege that a matrix set forth factors for eligibility for severance, and the amount and type of severance. ER-51 ¶ 28.[9] Participants allege specific details regarding the intended benefits, ER-52 ¶¶ 30-32, and the procedures for receiving benefits, ER-52 ¶¶ 33-34. The benefits include payments based on salary, tenure, job level, department, reason for departure, a payment for health insurance continuation, pro-rated bonuses for certain types of employees, payments for RSUs, and outplacement services. ER-52 ¶ 30. Participants include details on the procedures for receiving benefits, including how payments are calculated, processed, and paid, and required approvals. ER-52 ¶¶ 33-34; ER-35 ¶¶ 6-10. Participants also allege that the Plan was funded via "company funds," which is supported by Twitter documents summarizing the Plan. ER-52 ¶ 36. Participants also provide specific information regarding the RSU calculations. ER-52 ¶ 32; ER-53-54 ¶ 43. These allegations are sufficient to establish that the terms of the Twitter Severance Plan are reasonably ascertainable at the pleadings stage.

---

[9] As discussed above in Section II.A, Twitter and Musk's failure to follow ERISA, which includes providing plan documents to employees, does not absolve them of ERISA liability.

## V.    The district court erred by not allowing participants to amend their Complaint.

Finally, the district court erred by denying the Participants' request to amend their Complaint with respect to their ERISA claims. A denial of leave to amend based on the futility of the amendment or inability to allege a cause of action is reviewed *de novo*. *Kroessler*, 977 F.3d at 807.

The court's ruling here contravenes the Ninth Circuit's preference for allowing amendments. The Ninth Circuit has a "strong policy permitting amendment." *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir.1991) (internal citation omitted). Amendment is especially critical in ERISA cases, such as this one, where plaintiffs "have less than complete information about the defendants' organization." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009). Because of this imbalance of information, Ninth Circuit law provides that ERISA plaintiffs be allowed at least one amendment after a dismissal order. *Id.* While the district court dismissal order states eleven times that Participants have failed to plead sufficient facts, ER-18; ER-20; ER-22-23; ER-25, the court did not give participants the opportunity to address this by adding additional facts.

### A. The district court's conclusion that amendment of Participants' ERISA claims would be futile was based on misconstruing facts alleged in the Complaint.

The district court's conclusion that amendment of Participants' ERISA claims would be futile was based on erroneous inferences by the court, including

65

that there were no eligibility determinations beyond being terminated; that "mathematical calculations or formulas" were used to determine severance benefits; that these formulas "applied to all terminated employees"; and that only cash payments were promised after the takeover because outplacement services were no longer promised. ER-25. In short, the court found that "[t]he relevant plan is the severance plan that applied after the October 27, 2022, takeover," so "the complaint could not be amended to state a claim for violation of any earlier severance plans for which litigation risk and other facts may have been considered." ER-26.

The conclusion that amendment of Participants' ERISA claims would be futile relies on the same improper inferences discussed above that provided the foundation for the court's erroneous conclusion that the Twitter Severance Plan is not subject to ERISA. The contention that there were "no eligibility determinations beyond being terminated" fails to accept Participants' allegation that an employee's eligibility for severance depended on the reason for their departure, as well as legal risk and other factors, ER-51 ¶ 29, and each departing employee's eligibility had to be assessed by Twitter employees who administered the Plan, ER-52 ¶ 34. The assertion that formulas were used to assess severance benefits fails to credit Participants' allegation that "litigation risk and other factors" could alter an employee's severance benefit award. ER-51 ¶ 29; ER-35¶ 10. Finally, the

determination that outplacement services were not part of the Twitter Severance Plan after the takeover and instead only cash payments were offered is an inference of the court's creation that is against Participants' interest. These erroneous inferences are the unsteady ground on which the court wrongly concluded that amendment of Participants' ERISA claims would be futile.

At a minimum, Participants should be permitted to amend the Complaint to include allegations providing more information about the process for determining eligibility and amounts of benefits in each category, the relationship with the outplacement service provider, and additional aspects of the matrix, which may require a court ruling on whether the matrix is privileged.

## B. The district court's conclusion that Participants lack constitutional standing, and, therefore, amendment would be futile, is also based on misconstruing facts alleged in the Complaint.

Without any analysis, the district court concluded that amendment of Participants' ERISA claims would be futile because Participants "would then have to overcome the threshold issue of constitutional standing." ER-26. The district court reached this cursory conclusion based on its assumption that the Plan "was discontinued or modified greatly." ER-26. Constitutional standing is the requirement that a plaintiff show an injury in fact, a causal connection between the injury and the complained-of conduct, and that it is likely plaintiff's injury will be redressed by a favorable decision. *See Council of Ins. Agents & Brokers v.*

*Molasky-Arman*, 522 F.3d 925, 931 (9th Cir. 2008). Presumably, the district court meant that the named plaintiffs lack constitutional standing because it concluded that the plan at issue did not provide for the benefits they seek. However, because there are no facts before the court indicating that the Twitter Severance Plan was amended pursuant to the requirements for amendment of a plan under ERISA, the court's finding that the plan was "discontinued or modified greatly" was in error. Accordingly, its conclusion that named Plaintiffs could not show that they have constitutional standing was also in error.

To the extent the district court meant that it lacked subject-matter jurisdiction if there is no ERISA plan, because Participants have alleged sufficient facts to establish the existence of an ERISA plan at the pleadings stage, federal court jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) because this action arises out of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(2), and 1132(a)(3).

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, Twitter's and Musk's motion to dismiss denied, and the case remanded for discovery.

DATED: October 25, 2024                    Respectfully submitted,

By: <u>*/s/ Kate Mueting*</u>
Kate Mueting (D.C. Bar No. 988177)
kmueting@sanfordheisler.com
**SANFORD HEISLER SHARP**
**MCKNIGHT, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5206

69

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  24-5045

I am the attorney or self-represented party.

**This brief contains** 13,471 **words, including** 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R.
29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____ .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/Kate Mueting    **Date** 10/25/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                                          *Rev. 12/01/22*

70